FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0388

DA 18-0388

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 193

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DUSTIN SCOTT DINEEN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 17-0973
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Scott D. Twito, Yellowstone County Attorney, Brett Linneweber, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  May 20, 2020

Decided:  August 4, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    A Yellowstone County jury convicted Dustin Scott Dineen of felony strangulation of his girlfriend, Jena Curtiss.  Jena testified at trial, contrary to her earlier statements to numerous others, that Dineen had not attempted to suffocate her.  Dineen acknowledged the "overwhelming" evidence that he assaulted Jena by putting his hand over her mouth but argued that he did not cover her nose or purposely or knowingly impede her normal breathing.  The jury rejected Dineen's urging to convict him of the lesser offense of Partner or Family Member Assault.

¶2    Dineen appeals, claiming the evidence is insufficient to sustain his conviction because it rests solely on Jena's uncorroborated prior inconsistent statements.  Dineen claims further that his counsel was ineffective by opening the door to evidence of Dineen's prior violence.  Finally, he urges the Court to find plain error in the District Court's instruction on the mental state for strangulation.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    Dineen and Jena were at home together the night of August 14, 2017.  Their one-year-old daughter was with Dineen's mother.  Jena's other two children were in Forsyth to visit their paternal grandparents.  Jena and Dineen got into a heated argument when Jena's mother Alecia—who also lives in Forsyth—called Jena to tell her that the two children were with her.  Alecia told Jena that she intended to file a report the next morning with the Child and Family Services (CFS) Division of the Montana Department of Public Health and Human Services (DPHHS).  Jena testified at trial that this news upset both her

2

and Dineen, and they began arguing. Dineen put his hand over her mouth to stop her from yelling. Jena was laying on the bed and rolled over on her stomach. Jena testified that, as she slid down to get away, Dineen's hand covered both her nose and mouth, cutting off her ability to breathe "for the short minute" that she moved away. She clarified on cross-examination that "it felt like forever, but probably [was] like [a] minute, if that." Jena testified that she left the house, realized she did not have her phone, went back in to retrieve it, then left again and called her mother because she needed a place to go. Jena's sister Priscilla picked her up at a nearby Walgreen's and brought her to Priscilla's home, where Jena would remain for the next month. Alecia was there when they arrived, and Jena told them both what had happened. Jena testified that she was "drained" and "a little sore" from the altercation with Dineen, but that she had not feared for her life. Jena acknowledged that she had called 9-1-1 about an hour after getting to her sister's house and explained that she had done so because Alecia said she would take the kids to CPS if Jena did not.

¶4　　On cross-examination, Jena confirmed that Dineen had at some point put his hand over her mouth when he assaulted her that night but said she was not afraid of him. She testified that they were co-parenting their daughter under an arrangement she felt was the best for all of them, with Dineen having primary custody. Jena clarified that the fight with Dineen had upset her, and she left the house "just to alleviate the situation and try to get things calmed down[.]" Jena "[a]bsolutely" denied that she was offering false testimony out of "hope for a romantic relationship" with Dineen. She denied further that she was testifying out of fear of Dineen. The following exchange then occurred:

3

Q. During the five years that you were together, was physical fighting something that occurred regularly or is this an exception?

A. This is an exception, I mean every relationship has their arguing and stuff, but it was never like that until this time.

¶5    The State called Alecia and Priscilla to testify to their recollections of the night of the incident, and both gave a starkly different account. Jena, "frantic" and "hysterical," had called her mother to come get her. When Priscilla picked her up, Jena—frantic and breathing heavily—exclaimed, "He's going to get in the car, he's going to follow me, he's tried to kill me, he's tried to kill me. I couldn't breathe, I couldn't breathe." Both Alecia and Priscilla described Jena's explicit fear that she was "going to die" because she "could not breathe." Alecia had "never" seen her daughter that scared. Jena told Alecia and Priscilla that Dineen pushed her face into the mattress, held one hand over her nose and mouth, and put pressure on the back of her neck so she "couldn't breathe." Jena told her mother, "I've never been close to death before, I don't know how I got out."

¶6    The State called two additional witnesses, CFS employee Jennifer Barcus and Billings Police Officer Jayden Romero. Barcus had seen Jena two days after the assault. Jena told Barcus that Dineen grabbed her and used one hand to cover her mouth and nose. Jena said "she felt Dustin was trying to kill her by attempting to suffocate her. Dustin allegedly threw Jena on the bed, face first, forced his knee on the back of her neck and shoved his open hand to cover her mouth and nose again." Contrary to Jena's testimony on cross-examination, Barcus said that Jena had told her there was "[a] lot of domestic violence, physical aggression in the relationship, and then also Dustin Dineen displaying mean behaviors toward her" as recently as eight months before the August assault.

4

Officer Romero, who responded to the 9-1-1 call, also testified that Jena described Dineen forcefully holding her down and covering her nose and mouth. He described Jena's injuries, including bruises, a swollen lip, and her raspy voice. Both Barcus and Officer Romero testified that Jena told them she had to fight to get Dineen off of her and that she fled the home.

¶7 Dineen rested without calling witnesses. The District Court denied his oral motion to dismiss for insufficient evidence. The jury found Dineen guilty of strangulation.

## STANDARD OF REVIEW

¶8 Whether evidence is sufficient to sustain a conviction presents a question of law that we review de novo. *State v. Laird*, 2019 MT 198, ¶ 42, 397 Mont. 29, 447 P.3d 416. We also review de novo a claim of ineffective assistance of counsel, a mixed question of law and fact. *Garding v. State*, 2020 MT 163, ¶ 12, 400 Mont. 296, ___ P.3d ___ (citations omitted). We have discretion to review an unpreserved claim for plain error and do so sparingly when a defendant's fundamental constitutional rights are implicated and the error calls the fairness of the proceedings into question. *State v. Lackman*, 2017 MT 127, ¶ 9, 387 Mont. 459, 395 P.3d 477 (citing *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, 95 P.3d 166).

## DISCUSSION

¶9 *1. Did the trial evidence support Dineen's conviction of felony strangulation?*

¶10 "A motion to dismiss for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence

5

upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. McAlister*, 2016 MT 14, ¶ 6, 382 Mont. 129, 365 P.3d 1062 (citing *State v. Rosling*, 2008 MT 62, ¶ 35, 342 Mont. 1, 180 P.3d 1102; § 46-16-403, MCA). Section 45-5-215(1), MCA, provides,

> A person commits the offense of strangulation of a partner or family member if the person purposely or knowingly impedes the normal breathing or circulation of the blood of a partner or family member by:
> (a) applying pressure on the throat or neck of the partner or family member; or
> (b) blocking air flow to the nose and mouth of the partner or family member.

¶11 Dineen argues, as he did before the trial court, that the only evidence of strangulation came from Jena's prior inconsistent statements, which cannot alone sustain his conviction. Though he acknowledged placing his hand over Jena's mouth, Dineen maintains that the prior statements provided the only evidence that he covered her nose. Without those, the State had no other evidence that he purposely or knowingly impeded her breathing.

¶12 "Prior inconsistent statements may be admitted as substantive evidence and may be considered in 'determining whether the evidence is sufficient to sustain the conviction.'" *City of Helena v. Strobel*, 2017 MT 55, ¶ 11, 387 Mont. 17, 390 P.3d 921 (quoting *State v. Torres*, 2013 MT 101, ¶ 27, 369 Mont. 516, 299 P.3d 804). But prior inconsistent statements are insufficient, standing alone, to prove a necessary element of a criminal offense and must be corroborated by other evidence. *Strobel*, ¶ 11. "'Corroborative evidence' is additional evidence of a different character to the same point." Section 26-1-102(3), MCA. Corroborative evidence may be circumstantial.

*Strobel*, ¶ 18. "Circumstantial evidence is evidence 'which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence.'" *Strobel*, ¶ 16 (quoting § 26-1-102(1), MCA). "Thus, circumstantial evidence is corroborative if it supports an inference that an element of the action [or offense] occurred." *Jones v. All Star Painting, Inc.*, 2018 MT 70, ¶ 24, 391 Mont. 120, 415 P.3d 986.

¶13 Review of the record reveals that the State presented ample evidence at trial to corroborate Jena's prior inconsistent statements about Dineen's actions on the night of August 14, 2017. Every witness gave considerable additional evidence corroborating Jena's assault when she initially described it: her "frantic" and "hysterical" demeanor and "heavy breathing" when she called her mother; the swollen red throat, cuts in her lip, and bruising that became more apparent by the next day; her raspy voice as she described to her sister and mother what had happened; her disheveled and out-of-character appearance, wearing only what appeared to be Dineen's cut-off T-shirt and shorts; and her position on the couch when Officer Romero arrived ("curled up . . . kind of wrapping her arms around the legs."). Dineen's own actions and statements offered additional corroboration: he called Jena about 100 times after she left the house that night; sent her numerous text messages that included, among other statements, "I don't need your money. . . . Or your mouth, that's why I . . . [c]overed it[]"; and admitted to Officer Romero that he was tired of listening to Jena yell and "covered her mouth up" for "10 to 15 seconds."

¶14 The Dissent's analysis of Dineen's sufficiency-of-the-evidence claim makes two critical mistakes. First, criticizing the Court for "recount[ing the evidence] in great detail," Dissent, ¶ 42, it fails to view the evidence in the light most favorable to the prosecution. *McAlister*, ¶ 6. The standard of review calls for determining whether, through that lens, "any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Trujillo*, 2008 MT 101, ¶ 8, 342 Mont. 319, 180 P.3d 1153; *Laird*, ¶ 59. "When sufficiency of the evidence is challenged, it is our job as an appellate court to probe the record for evidence to support the fact-finder's determination." *Murray v. Whitcraft*, 2012 MT 298, ¶ 26, 367 Mont. 364, 291 P.3d 587.

¶15 Second, its contention that the State failed to "prove that [Jena's] **nose _and_ mouth** were covered" (Dissent, ¶ 49 (emphasis in original)) misconstrues the law on prior inconsistent statements. Corroborating evidence "need not be *direct* evidence of each element of the offense." *Strobel*, ¶ 18. As long as there is reliable evidence to support each element, the corroborating evidence may be circumstantial. *Strobel*, ¶ 18. "The corroborating testimony does not have to be sufficient, standing alone, to prove guilt. It instead must 'support' the elements of the offense established by the substantive evidence that the prior inconsistent statement supplies." *Strobel*, ¶ 18 (quoting *Torres*, ¶ 27).

¶16 The circumstantial evidence of Jena's appearance, injuries, and demeanor and of Dineen's text messages and statements to Officer Romero fully "'support[ed]' the elements of the offense" charged in this case. *Strobel*, ¶ 18. The injuries she suffered and the effects she demonstrated from the assault allowed the jury to infer that she

8

"could not breathe." Had Dineen covered only her mouth, as he contended, her breathing would not have been impeded. The substantive evidence of strangulation that Jena's contemporaneous descriptions supplied was compelling. Combined with the circumstantial evidence corroborating those descriptions, we conclude that a rational juror could find that Dineen purposely or knowingly impeded Jena's breathing during the assault by blocking air flow to her nose and mouth.

¶17 *2. Is Dineen entitled to a new trial because his counsel opened the door to inadmissible evidence of prior violence in the relationship?*

¶18 Four days before trial, defense counsel filed a motion in limine to exclude evidence of Dineen's prior crimes or acts. The motion argued in general terms that any "so called 404(b) evidence" would not make any more or less likely the elements of strangulation. Dineen also moved to exclude Jennifer Barcus from testifying because the State untimely disclosed her as a witness and intended to rely on her affidavit in confidential DPHHS files that was not disclosed in discovery. In its responsive trial brief, the State represented that it did not intend to offer evidence of a "non-strangulation violent attack of [Jena] in front of her two boys" two weeks before the charged offense unless "the Defendant necessitates it by making attempting [sic] to place all contextual blame on [Jena.]" The State represented further that it intended to present evidence of other acts only to give context to the phone calls that preceded and followed the charged assault— namely, the disclosures Jena's two boys made to Alecia that prompted her to tell Jena she intended to make the CFS report.

9

¶19    The court took up the defense motions on the first day of trial. It first discussed with counsel the State's intended purpose for calling Barcus. The prosecutor confirmed that part of her testimony would pertain to the injuries she personally observed when she saw Jena soon after the assault. He clarified that he would call her "[i]f it becomes necessary, if there's a challenge to, hey, you know, this bruising didn't happen or if I need her for a prior inconsistent statement . . . if [Jena] says, no, this didn't happen, because she did make the statement to Jennifer Barcus as well."[1] Defense counsel had no objection to Barcus testifying about the bruising, "but certainly anything told to her at that point is simply . . . hearsay[.]" When the court questioned the State's intended use of "404(b) evidence," the prosecutor reiterated that he intended only to offer context for what triggered the argument and resulting assault. After further discussion, the court made clear it would not allow testimony of "abuse two to three times a week" or the alleged assault charge apparently pending in municipal court, but it would permit "very, very limited questioning of [Alecia,] essentially what led you to this conversation with your daughter."

¶20    During Jena's cross-examination, the court recessed briefly to allow defense counsel to prepare the 9-1-1 recording for publication to the jury. At that point, counsel conferred with the court about Jena's testimony. The State advised the court that, based on Jena's inconsistent trial testimony, it intended to ask its witnesses to describe Jena's prior statements about what Dineen did to her on August 14, 2017. And after hearing Jena also

---

[1] The Dissent's statement that the State had "indicated Barcus would not even testify at trial" (Dissent, ¶ 54) is thus inaccurate. The prosecutor stated his intent to call her if needed for "a prior inconsistent statement," and Dineen does not dispute that Barcus properly was called for that purpose when Jena's trial descriptions of Dineen's actions contradicted what she said previously.

claim that the relationship was not violent, the State advised the court that it wished to question Barcus about that prior inconsistency as well. The State argued, and defense counsel acknowledged, that counsel had opened the door to evidence of prior violence in the relationship. After discussing the matter with counsel, the District Court agreed that Dineen had opened the door to prior violence in the relationship but made clear it would not allow "essentially a mini-trial of the CPS case within the Defense case[.]" The court emphasized "that we are not going to open the door to all of the things that this family has done" with CPS. Defense counsel then indicated that he and the prosecutor had discussed the matter further and that he "was not going to object to a tight focus" with the State's intended narrow leading questions.

¶21 The State called Barcus as its next witness. The prosecutor asked, "[I]f [Jena] testified today that violence or physical altercations were an exception, specifically one on August 14th, 2017, is that consistent with what she told you?" When Barcus replied "no[,]" the prosecutor asked her how Jena had portrayed the relationship. Barcus said that Jena had told her there was "[a] lot of domestic violence, physical aggression in the relationship, and then also Dustin Dineen displaying mean behaviors toward her" as recently as eight months before the August assault. The State also questioned Barcus about Jena's description of the assault and about the injuries Barcus observed.

¶22 Dineen's only claim on appeal pertains to Barcus's answer to the question about Dineen's prior violence. The claim is limited to his argument that counsel rendered

ineffective assistance by opening the door to this testimony.[2]   He thus bears the "heavy burden" of proving, "in light of all the circumstances," that counsel's actions "were outside the wide range of professionally competent assistance[,]" *Whitlow v. State*, 2008 MT 140, ¶¶ 16, 21, 343 Mont. 90, 183 P.3d 861, "so undermin[ing] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result[,]" *Cheetham v. State*, 2019 MT 290, ¶ 9, 398 Mont. 131, 454 P.3d 673 (internal citations and quotations omitted).

¶23    As he readily acknowledged, defense counsel no doubt made a mistake by asking Jena directly whether physical violence in her relationship with Dineen was "the exception." It is plain from the context in which counsel asked the question and from Jena's answers that he was attempting to draw out her testimony that she was neither hoping to rekindle a relationship with Dineen nor testifying out of fear of him. *Strickland v. Washington* instructs the court to "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984). The State argues that counsel's mistaken question did not constitute constitutionally deficient performance because he also elicited testimony favorable to Dineen. As a result, it did not "render[] the trial result unreliable or the proceedings fundamentally unfair." *City of Libby v. Hubbard*, 2018 MT 2, ¶ 19, 390 Mont. 108, 408 P.3d 532 (citation omitted).

---

[2] Dineen does not claim that we should review for plain error the District Court's decision to allow the State to ask Barcus about Jena's prior statement. Nor does he argue plain error in the prosecutor's closing argument. For that reason and for reasons similar to our conclusion below that Dineen did not suffer *Strickland* prejudice, we do not *sua sponte* invoke plain error review.

12

¶24 To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate, first, "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Whitlow*, ¶ 10 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "Thus, if an insufficient showing is made regarding one prong of the test, there is no need to address the other prong." *Whitlow*, ¶ 11 (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.")). If Dineen was not prejudiced, we therefore need not decide whether he has met his burden to demonstrate deficient performance.

¶25 To establish prejudice, Dineen must prove a "reasonable probability" that, without counsel's error, "the result of the proceeding would have been different." *State v. Lehrkamp*, 2017 MT 203, ¶ 26, 388 Mont. 295, 400 P.3d 697 (citing *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234). Given the defense theory at trial, Dineen therefore must show a reasonable probability that, considering all of the trial evidence without Jena's statement to Barcus about domestic violence in the relationship, the jury would have convicted him of the lesser PFMA offense. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. This is a heavy burden indeed.

13

"A defendant must do more than just show that the alleged errors of a trial counsel 'had some conceivable effect on the outcome of the proceeding.'" *State v. Peart*, 2012 MT 274, ¶ 23, 367 Mont. 153, 290 P.3d 706. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cheetham*, ¶ 9 (quoting *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064).[3]

¶26 Dineen argues that the District Court ruled on the first day of trial that it would not allow evidence of prior violence because of its prejudicial character. He points out that, in its closing argument, the State brought up the "context" of his relationship with Jena, arguing that the State "sought to connect the prior incidents of violence with the charged conduct[.]" He contends that the State urged the jury to use the past conduct to infer the required mental state. Dineen fails to give the full context of the prosecutor's argument, however, and does not explain how, without Barcus's single answer contradicting Jena's trial testimony that there had not been violence in the relationship, the jury likely would have found him guilty of only the misdemeanor PFMA.

¶27 First, evidence of prior domestic violence was not the evidence on which the distinction between an admittedly violent assault or a strangulation turned. Instead, the undisputedly admissible testimony of Jena's injuries, actions, demeanor, and statements on

---

[3] Contrast this with the prejudice inquiry we use to determine if an evidentiary error was harmless: in that situation, "the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the [defendant's] conviction." *State v. Lake*, 2019 MT 172, ¶ 40, 396 Mont. 390, 445 P.3d 1211 (quoting *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735).

14

the night of the offense overwhelmingly supported the more serious strangulation charge. Second, the prosecutor's mention in argument of the "rocky relationship" came in the midst of his discussion of all the "consistency and corroboration with Jena's account that night." He catalogued for the jury the testimony describing Jena's palpable fear, appearance, injuries, and statements the night of the assault. He urged the jury to conclude that Dineen's "minimizing" statements to Officer Romero did not make sense in light of Jena's behavior and injuries.

¶28 In his closing argument, defense counsel characterized the prosecution's strangulation theory as "trying to dish up to you . . . its newest toy" from the Legislature, urging the jury to reject the State's argument that when Dineen kept Jena from breathing, he did so "on purpose." The State countered in rebuttal (during which it said nothing about the prior violence) that strangulation was "not a toy, it's a protective tool" and that the evidence plainly showed that Dineen strangled Jena as defined by the statute. It emphasized both Jena's trial testimony "that she couldn't breathe" and Dineen's own admission that he put his hand over her mouth and cut off her breathing—though he minimized for how long—arguing that the evidence proved "a deliberate act by the Defendant, [that h]e suffocated her, and he knew and he had to have known that was the potential consequences [sic]."

¶29 Jena's own trial testimony reveals the fallacy in Dineen's assertion that there is "reasonable probability" the result would have been different without Barcus's challenged statement. When asked on cross-examination how long she thought her "breath [was] cut

15

off," Jena said, "I don't know how long. It felt -- I mean it felt like forever, but probably like [a] minute, if that." Jena's contemporaneous statements to her mother, to her sister, to the investigating officer, and to Barcus were clear that Dineen impeded her normal breathing. She described that he blocked air flow to her nose and mouth while putting pressure with his knee or other hand on the back of her neck to hold her down. Considering the undisputedly admissible evidence and the circumstances as a whole, we conclude that Dineen has not met the *Strickland* prejudice standard.

¶30   *3. Has Dineen shown plain error in the District Court's jury instructions?*

¶31   Acknowledging that he did not object at trial, Dineen argues the District Court plainly gave an erroneous instruction that relieved the State of its burden to prove every element of the offense beyond a reasonable doubt. That instruction provided:

> If purposely or knowingly impeding the normal breathing or circulation of the blood of J.C. by blocking air flow to the nose and mouth of J.C. was not within the contemplation of [sic] purpose of the Defendant, either element can nevertheless be established if the result involves the same kind of harm or injury as contemplated but the precise harm or injury was different or occurred in a different way, unless the actual result is too remote or accidental to have a bearing on the Defendant's liability or on the gravity of the offense.

¶32   Dineen argues on appeal that the statute on which the instruction was based, § 45-2-201(2), MCA, does not apply to strangulation because the offense requires proof of a specific purpose or knowledge of impeding the victim's "normal breathing." Section 45-5-215(1), MCA. Dineen urges plain-error review because the instruction allowed the State to prove the felony charge without establishing beyond a reasonable doubt that Dineen intended to suffocate Jena, leaving unsettled the fundamental fairness of

16

the trial. The State points out that Dineen offered the identical instruction at trial and argues that the jury was instructed correctly on the elements of the offense, under which it still had to find that Dineen was aware it was "highly probable" his actions would result in impeding Jena's normal breathing.

¶33 Having reviewed the entire trial record, the instructions as a whole, and the arguments of counsel, we decline to review this claim for plain error.

**CONCLUSION**

¶34 The conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE

Justice James Jeremiah Shea specially concurring.

¶35 I join the Majority's Opinion as it pertains to Issues 1 and 3. Although I agree with the Majority's resolution of Issue 2, I would not resolve it on the prejudice factor of the *Strickland* test. Rather, I would conclude that defense counsel's performance did not fall "below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow,* ¶ 20. Since Dineen does not satisfy the first *Strickland* prong, I would decline to address the second prong.

¶36 "[T]here is no 'checklist' for judicial evaluation of attorney performance. Rather, in any case presenting an ineffectiveness claim, the performance inquiry must be 'whether

17

counsel's assistance was reasonable considering all the circumstances.'" *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). A review of the record in this case reveals the following circumstances: defense counsel was prepared for trial, advocated competently and aggressively for Dineen, and in all respects tried a competent case except for the single question that forms the sole basis of Dineen's ineffective assistance of counsel claim. While not minimizing the consequences of that question as far as opening the door to prior violence in Jena and Dineen's relationship, there was nevertheless a sound strategic reason for defense counsel's inquiry—he was seeking to establish that Jena's favorable testimony was not motivated by fear of Dineen, that she was no longer in a relationship with Dineen, and that he had not been regularly violent during their relationship.

¶37 With the benefit of hindsight, defense counsel's question—though not without a strategic purpose—may have been ill-advised, at least as it was phrased. However, as the United States Supreme Court cautioned in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

18

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal citations and quotations omitted).

¶38 The fundamental underpinning of providing a remedy for ineffective assistance of counsel is the recognition that when counsel's performance is so deficient, he or she is "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This does not mean defense counsel's performance must be mistake-free. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 6 (2003).

¶39 Every claim of ineffective assistance of counsel "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. The facts of this particular case are that defense counsel made a single mistake, in the moment, while cross-examining the complaining witness, in an otherwise competently tried case. This does not rise to the level of ineffective assistance of counsel.

¶40 I join the Majority Opinion on Issues 1 and 3, and while I agree with the Majority's resolution of Issue 2, because defense counsel's performance was not deficient, I would decline to address the issue of whether Dineen was prejudiced.

/S/ JAMES JEREMIAH SHEA

Justice Ingrid Gustafson dissenting.

¶41 The State did not present sufficient evidence to convict Dineen of strangulation of a partner or family member. In addition, Dineen was prejudiced by receiving ineffective

19

assistance of counsel at trial. The Court somehow finds both sufficient evidence for a strangulation conviction and a lack of prejudice to Dineen. I dissent.

¶42    In an obvious attempt to obfuscate the issues before us on appeal, exaggerate the sufficiency of the evidence actually presented, and bolster the affirmation of conviction, the Opinion dramatically recounts in great detail the testimony of Jena's mother and sister as to statements Jena supposedly made to them but utterly ignores the lack of evidence as to the elements of the actual offense charged.[1]

***Sufficiency of the Evidence***

¶43    We review a district court's denial of a motion to dismiss for insufficient evidence de novo. *Laird*, ¶ 42 (citing *McAlister*, ¶ 6). "A new trial cannot be granted where the evidence adduced at the first trial proves insufficient to support a conviction." *State v. Polak*, 2018 MT 174, ¶ 35, 392 Mont. 90, 422 P.3d 112 (citing *State v. Warren*, 192 Mont. 436, 442, 628 P.2d 292, 296 (1981)). If a reviewing court finds the evidence legally insufficient, the proper remedy is a judgment of acquittal. *Polak*, ¶ 35 (citing *Warren*, 192 Mont. at 442, 628 P.2d at 296).

¶44    "When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant." Section 46-16-403, MCA. "A person commits the offense of strangulation of

---

[1] In addressing the Dissent's analysis, the Opinion further attempts to obfuscate the issues on appeal by substituting evidentiary requirements with emotionally charged testimony which does not corroborate any evidence that established Dineen covered Jena's nose and mouth.

a partner or family member if the person purposely or knowingly impedes the normal breathing or circulation of the blood of a partner or family member by . . . blocking air flow to the nose and mouth of the partner or family member." Section 45-5-215(1)(b).

¶45     At the close of the State's case, Dineen moved to dismiss the charge due to insufficient evidence pursuant to § 46-16-403, MCA, arguing testimony regarding Jena's prior inconsistent statements about what happened during the assault was not enough to find guilt or innocence beyond a reasonable doubt. The State countered that it had presented more than just prior inconsistent statements by showing evidence of the injuries Jena suffered to her mouth and throat. While the Court agrees with—and improperly expands upon—the State's argument today, a review of the record shows the evidence of strangulation to be entirely lacking.

¶46     The State must prove each element of a charge with sufficient evidence. *State v. Spottedbear*, 2016 MT 243, ¶ 23, 385 Mont. 68, 380 P.3d 810. "Prior inconsistent statements may be admitted as substantive evidence and may be considered in 'determining whether the evidence is sufficient to sustain the conviction.'" *Strobel*, ¶ 11, (quoting *Torres*, ¶ 27). While prior inconsistent statements may be admitted as substantive evidence, they are insufficient, standing alone, to prove a necessary element of a criminal offense and must be corroborated by other evidence. *Strobel*, ¶ 11.

¶47     To convict Dineen of strangulation of a partner or family member, the State must prove Dineen "purposely or knowingly impede[d] the normal breathing or circulation of

21

the blood of a partner or family member by . . . blocking air flow to the ***nose and mouth*** of the partner or family member." Section 45-5-215(1)(b), MCA (emphasis added).

¶48 In addressing whether sufficient evidence supports Dineen's conviction under § 45-5-215(1)(b), MCA, for covering Jena's nose and mouth, the Court sets forth a litany of "corroborating" evidence: Jena's demeanor; her swollen red throat; cuts in her lip; bruising on her body; her raspy voice; Jena wearing Dineen's clothing; and Jena's position on the couch when Officer Romero arrived. It finds additional corroboration that Dineen purposely or knowingly impeded Jena's breathing by covering her nose and mouth from Dineen's actions: calling Jena nearly 100 times; sending a text message about covering Jena's mouth; and his admission that he "covered her mouth up" for "10 to 15 seconds." Missing from this supposed corroborating list is a scintilla of evidence that Jena's nose was covered, as required to convict Dineen under § 45-5-215(1)(b), MCA.

¶49 While Dineen admits he placed his hand over Jena's mouth, no evidence, outside of Jena's prior inconsistent statements, demonstrate he purposely or knowingly placed his hand over her nose. The physical evidence presented by the State supports that Dineen committed an assault, and it supports that he covered Jena's mouth during that assault, but none of the physical evidence presented at trial supports Dineen covering Jena's nose during that assault. Pursuant to the statute, the State must prove that her ***nose <u>and</u> mouth*** were covered to convict Dineen of strangulation of a partner or family member. Upon review of the evidence presented at trial, the State failed in that attempt. The only evidence presented by the State for the "purposely or knowingly" element of strangulation was

22

Jena's prior inconsistent statements, which are insufficient, standing alone, to prove that element of the offense. *Strobel*, ¶ 11. As the Court correctly notes, corroborating evidence does not need to be direct evidence of each element of the offense; it may be circumstantial as long as it is reliable and supports the elements of the offense. Opinion, ¶ 15. What the Court still fails to appreciate is that not a single thing in its laundry list of circumstantial evidence in this case supports the inference that Dineen purposely or knowingly covered Jena's nose.

¶50 There is both direct and circumstantial evidence that Dineen assaulted Jena and purposely or knowingly covered her mouth. That is not enough for a strangulation conviction. The Court claims the "circumstantial evidence of Jena's appearance, injuries, and demeanor and of Dineen's text messages and statements to Officer Romero fully support[ed] the elements of the offense charged in this case." Opinion, ¶ 16 (internal quotations omitted). This is simply not so, because neither Jena's appearance nor her injuries showed anything wrong with her nose. Further, both Dineen's text messages and his statements to Officer Romero referred to covering Jena's mouth. Nothing in Dineen's text messages or statements corroborates him purposely or knowingly covering Jena's nose. Again, he admits to both assaulting Jena and covering her mouth with his hand. The only remaining thing mentioned by the Court as circumstantial corroboration of strangulation is Jena's demeanor after the assault. This is clearly insufficient to support the inference that Dineen purposely or knowingly impeded Jena's breathing by covering her nose and mouth. Jena was assaulted by Dineen and in doing so he covered her mouth

23

with his hand—this fact is not in dispute. Jena's demeanor after the incident corroborates that she was the victim of a PFMA—which Dineen admits. It does not corroborate that Dineen strangled her. It is clear from the record that Dineen committed a partner or family member assault, a fact which he admitted at trial. It is also clear from the record that there is no evidence, outside of Jena's prior inconsistent statements, that he committed a strangulation of a partner or family member. As to the charge of strangulation, "the proper remedy is a judgment of acquittal." *Polak*, ¶ 35.

***Ineffective Assistance of Counsel***

¶51    Article II, Section 24 of the Montana Constitution and the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, guarantee a defendant the right to effective assistance of counsel. *State v. Santoro*, 2019 MT 192, ¶ 14, 397 Mont. 19, 446 P.3d 1141 (citing *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095). We have adopted the two-pronged *Strickland* test in judging ineffective assistance of counsel (IAC) claims. *State v. Crider*, 2014 MT 139, ¶ 34, 375 Mont. 187, 328 P.3d 612 (citing *Kougl*, ¶ 11). In order to show IAC, "a defendant must prove both (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Crider*, ¶ 34. A defendant must satisfy both prongs of the *Strickland* test in order to prevail on an IAC claim. *Whitlow*, ¶ 11.

¶52    Turning now to Dineen's IAC claim, the Court finds Dineen suffered no prejudice by his counsel opening the door to evidence of prior acts of violence in the relationship. The Court somehow finds no prejudice after recognizing "defense counsel no doubt made

24

a mistake" by asking the question which opened the door. Opinion, ¶ 23. Because it finds no prejudice, the Court does not address whether counsel's performance was deficient under the *Strickland* test. I believe it is abundantly clear that Dineen did suffer prejudice, so I address both prongs of the *Strickland* test here.

¶53 "Counsel's performance is deficient if it falls below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *State v. Brown*, 2011 MT 94, ¶ 12, 360 Mont. 278, 253 P.3d 859. There is a strong presumption counsel's conduct falls within the wide range of reasonable professional conduct. *Kougl*, ¶ 11.

¶54 The State argues Dineen's counsel did not provide ineffective assistance of counsel when he opened the door to the admission of evidence regarding Dineen's prior violence in the relationship because the question was asked for "a reasonable strategic reason"—to bolster Jena's credibility as a witness. Dineen's counsel explained he had intended to use his questioning to bolster Jena's credibility, but did not intend to open the door to the previously excluded Rule 404(b) testimony. The State, in its brief, notes "the evidence that came in may have been more harmful to Dineen's case than the beneficial evidence" obtained from counsel's questioning of Jena, but argues Dineen has not overcome the presumption of reasonableness. I disagree. As previously discussed, Dineen's counsel had sought to ensure the damaging 404(b) testimony would be excluded from trial by use of a motion in limine. After the District Court granted the motion, the State indicated Barcus would not even testify at trial. Only after inadvertently opening the door to the evidence—

an outcome Dineen's counsel realized was possible "right after" asking the question—did the State call Barcus to testify about Jena's statements to her regarding Jena's relationship with Dineen. Dineen's counsel opened the door to the admission of the damaging 404(b) evidence by accident, not as part of any trial strategy, and his performance was therefore deficient. Accidentally damaging a client's case through a careless question clearly falls below the objective standard of reasonableness expected of attorneys, especially in light of the fact that counsel had already secured a ruling that such evidence should properly be excluded as its prejudice far outweighed its relevance.

¶55 Because Dineen has demonstrated his counsel's performance at trial was deficient, I turn now to the question of whether Dineen suffered prejudice from his counsel's actions. To succeed on his IAC claim, Dineen must satisfy both prongs of the *Strickland* test. *Whitlow*, ¶ 11. To demonstrate prejudice, Dineen must demonstrate "that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Turnsplenty*, ¶ 14 (citation omitted).

¶56 Dineen asserts he was prejudiced by the admission of Barcus's testimony regarding the relationship between Dineen and Jena because the State was able to present the case that the relationship had been violent throughout and paint Dineen as a bad and violent person. The State counters that Dineen's counsel received favorable testimony from the question because Jena testified the incident was an exception and the relationship was generally not violent. The State further asserts Barcus's testimony was unlikely to have affected the outcome of the case because of the other evidence presented of Dineen's guilt.

26

The Court, because of its erroneous conclusion regarding the sufficiency of the evidence, agrees with the State that there was no prejudice to Dineen. As I discussed above, the only evidence Dineen purposely or knowingly covered Jena's nose—which is absolutely required to convict him of strangulation pursuant to § 45-5-215(1)(b), MCA—is Jena's prior inconsistent statement to that effect. Her prior inconsistent statement is insufficient, standing alone, to prove this necessary element of the criminal offense. *Strobel*, ¶ 11.

¶57 I agree with Dineen that he suffered prejudice due to the deficient performance of his counsel. As previously discussed, counsel opening the door to the previously excluded 404(b) evidence was a mistake. The State quickly capitalized on the mistake of Dineen's counsel by calling Barcus—a child protection specialist who would be perceived to be a professional in a position of authority charged with investigating prior asserted violence in the relationship[2] and would have no motivation to testify untruthfully—to testify to Jena's claim of repeated prior violence in the relationship. During closing argument, the State focused the jury's attention to Barcus's testimony, portraying the relationship as a violent one. In analyzing prejudice, Dineen need only demonstrate a "reasonable probability" the result of the proceeding would have been different. *Turnsplenty*, ¶ 14. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, but it does not require that a defendant demonstrate that he would have been acquitted." *Kougl*, ¶ 25 (internal quotations and citation omitted). There is a reasonable probability the outcome of the case would have been different but for counsel's error in opening the door to the

---

[2] Although, there is no indication she actually investigated any allegations of violence in the relationship.

27

admission of prejudicial evidence of Dineen's prior bad acts. Without the introduction of Barcus's testimony regarding Jena's claim of a pattern of violence in the relationship, it is possible and quite probable the jury would have found Dineen not guilty of strangulation and convicted him only of the lesser-included offense of misdemeanor partner or family member assault—which Dineen admits he committed. An inartful question from his counsel which opened the door to the admission of previously-excluded evidence, pounced on by the State to portray the relationship between Jena and Dineen as one marred by violence, manifestly prejudiced Dineen's defense in this case.

¶58 In addition to determining reversal is required due to counsel's ineffectiveness, I would further conclude the District Court's admission of the Rule 404(b) evidence was erroneous and constituted an abuse of discretion. M. R. Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In addition, M. R. Evid. 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Recognizing the extremely prejudicial effect reports of prior domestic violence would have on his client, Dineen's counsel filed a motion in limine before trial to ensure such evidence would be excluded. The State responded to Dineen's motion in limine by informing the District Court that it no longer intended to present 404(b) evidence, essentially conceding that admitting the evidence of prior acts of violence was unfairly prejudicial to Dineen. The District Court granted Dineen's motion

28

in limine and the evidence was excluded—and would have remained so but for counsel's mistake.

¶59 Shortly after Dineen's counsel asked Jena on cross-examination whether physical fighting was something that "occurred regularly" or if this incident was "an exception," the State argued that Dineen had opened the door to the admission of the previously-excluded evidence of prior violence. Dineen's counsel explained he was attempting to establish that Jena's motive for testifying was not fear of Dineen, but realized "right after" he asked the question that he "was perhaps opening the door." Dineen's counsel argued the question before the District Court was "whether I opened it a little bit or kicked it wide open." He further argued the admission of the evidence "will certainly be very prejudicial to our case, and I don't know that it's necessarily probative of what happened." The District Court ruled Dineen had opened the door and it was therefore "going to allow those questions."

¶60 After the District Court ruled Dineen had opened the door, the State quickly pounced on Dineen's counsel's mistake, immediately calling CFS worker Barcus to testify to "[a] lot of domestic violence, physical aggression in the relationship, and then also Dustin Dineen displaying mean behaviors towards [Jena]." During closing argument, the State again reiterated Barcus's testimony of the "rocky relationship," during which Dineen "had been physically aggressive" towards Jena. It further noted the jury could infer whether Dineen acted purposely or knowingly from the facts and circumstances surrounding the incident, emphasizing that was the "very reason" the jury was "given the context of the relationship."

29

¶61 While a district court has discretion to determine the admissibility of evidence, "Rule 404(b) evidence 'must be clearly justified and carefully limited.'" *State v. Blaz*, 2017 MT 164, ¶ 12, 388 Mont. 105, 398 P.3d 247 (quoting *State v. Aakre*, 2002 MT 101, ¶ 12, 309 Mont. 403, 46 P.3d 648). "A district court may minimize unfair prejudice by admitting evidence for a particular purpose and limiting the uses to which the jury may put the evidence." *State v. Pulst*, 2015 MT 184, ¶ 19, 379 Mont. 494, 351 P.3d 687 (citations omitted).

¶62 In this case, Dineen's counsel's framing of the issue as whether he opened the door "a little bit or kicked it wide open" proves prescient. Having already recognized the extremely prejudicial nature of the prior violence evidence by granting Dineen's motion in limine, the District Court was required to "carefully limit" the admission of such evidence after Dineen's counsel unintentionally opened the door. "The right to a full cross-examination of a defendant's character traits, once placed at issue, is not limitless." *State v. Gowan*, 2000 MT 277, ¶ 18, 302 Mont. 127, 13 P.3d 376 (citations omitted). The District Court did not "carefully limit" the evidence, however, and the State took full advantage of the opportunity to portray Dineen and Jena's relationship as one marred by years of physical violence by Dineen. The District Court, having ruled the Rule 404(b) evidence was now admissible due to Dineen's counsel's mistake, still should have carefully balanced the probative value of the evidence with the danger of unfair prejudice to Dineen. *See State v. Buckles*, 2018 MT 150, ¶ 13, 391 Mont. 511, 420 P.3d 511. The prior bad act 404(b) evidence here, which lacked reliability having never been criminally charged,

proven, or even reported, was presented by the State as if it were an indisputable truth. Pursuant to Rule 403, given its lack of relevance and its substantial prejudice as already recognized by the District Court's initial determination to exclude it, the evidence should have remained excluded as its probative value was "substantially outweighed by the danger of unfair prejudice" regardless of counsel ineffectiveness.

¶63 Finally, I agree with the Court that plain error review on Jury Instruction No. 20 is not warranted as Dineen not only did not object to Instruction No. 20, he offered it as a proposed instruction himself. Proposing such an instruction further demonstrates the ineffective assistance of counsel Dineen received at trial, however the claim is not one suitable for plain error review in this case. Regardless, this issue should not even be reached due to the lack of sufficient evidence supporting a strangulation conviction.

¶64 After my review of the record, I would conclude Dineen has demonstrated a reasonable probability that, but for counsel's errors, the result of his trial would have been different and reverse his conviction for strangulation of a partner or family member.


/S/ INGRID GUSTAFSON


Justices Dirk Sandefur and Laurie McKinnon join in the dissenting Opinion of Justice Gustafson.


/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON


31